No. 55,387

James P. Sellars and Kelly Sellars, *Appellants*, v. Stauffer Communications, Inc. *Appellee.*

(695 P.2d 812)

Opinion filed March 2, 1985.

*Timothy A. Short,* of Spigarelli, McLane & Short, of Pittsburg, argued the cause, and *Fred Spigarelli,* of the same firm, was with him on the brief for appellant.

*Michael W. Merriam,* of Colmery, McClure, Letourneau, Entz & Merriam, of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

Holmes, J.: This case is before the Court on a petition for review of a decision of the Court of Appeals in *Sellars v. Stauffer Communications, Inc.,* 9 Kan. App.2d 573, 684 P.2d 450 (1984). The facts are fully set forth in the opinion of the Court of Appeals and need not be repeated here. Summary judgment was granted in favor of the defendant and upon appeal that determination was reversed by a two-to-one decision.

Briefly, the question before the court is whether under the facts in this case the spouse of a public official in a defamation action against a member of the news media must prove the statements or publications were made with malice. The plaintiff, Kelly Sellars, was the wife of the Crawford County Sheriff and, although she was asserting she had been personally defamed, the district court held the sheriff, and not Kelly, was the subject of the published articles and, even though she was not a public official or a public figure, she was required to show malice on the part of the defendant.

A majority of the Court of Appeals, in a thorough majority opinion by Judge Parks and an equally thorough dissenting opinion by Judge Abbott, determined the trial court erred in requiring plaintiff to bear the burden of proving malice on the part of the defendant. We have carefully considered the record, briefs of the parties and our own rather extensive research and conclude the majority of the Court of Appeals was correct. As already indicated, the opinions of the Court of Appeals thoroughly consider the issues and we see nothing to be gained by repeating here what that court has already said. Therefore, a majority of the members of this court concur with the majority opinion of the Court of Appeals and adopt that opinion as the opinion herein.

The decision of the Court of Appeals is affirmed, the judgment of the district court is reversed and the case is remanded to the trial court for further proceedings.

PRAGER, J., dissenting: I respectfully dissent. In my opinion, the plaintiff, Kelly Sellars, is a limited public figure as to the two articles written, and, as a matter of law, the record does not show that the statements which are alleged to be defamatory were published with actual malice. The majority opinion of the Court of Appeals correctly points out that publications concerning a public official or a public figure are qualifiedly privileged and are actionable only if malice can be shown. If the defendant is neither a public official nor a public figure, he or she need only prove that the article was negligently published. I agree with the majority that Kelly Sellars was not a public official. I also agree with the majority that Kelly Sellars was not a public figure for all purposes. I differ, however, with the majority in its holding that Kelly Sellars was not a public figure for the limited purpose of the subject matter of the newspaper articles in this case.

This case well illustrates the confusion that has arisen as a result of the decision of the United States Supreme Court in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 41 L.Ed. 2d 789, 94 S.Ct. 2997 (1974). The ambiguous language used in *Gertz* to define a public figure for limited purposes has caused a great deal of inconsistency in its application by federal trial courts and by various state courts throughout this country. The difficult problem in each case is to determine where to draw the line

between limited public figures and private individuals. Chief Judge Lawrence of the United States District Court for the Southern District of Georgia correctly described the situation when he stated in an opinion that "[d]efining public figures is much like trying to nail a jelly fish to the wall." *Rosanova v. Playboy Enterprises, Inc.*, 411 F. Supp. 440, 443 (S.D. Ga. 1976).

The various cases on the subject and the distinctions between a limited public figure and a private person are discussed in depth in *Hanrahan v. Horn*, 232 Kan. 531, 657 P.2d 561 (1983). In that opinion, it is pointed out that there is a delicate balance between First Amendment freedoms of speech and press and the legitimate interest in redressing wrongful injury resulting from a defamatory statement. The concept of a public figure status is an attempt to fine tune this balance. In *Gertz*, 418 U.S. at 351, Justice Powell stated that an individual who voluntarily injects himself or is drawn into a particular public controversy, thereby becomes a public figure for a limited range of issues. In such a case, a person assumes special prominence in the resolution of public questions. It seems to me that the confusion has arisen from the language in *Gertz* that a limited public figure is one who *thrusts himself into the forefront of a particular public controversy in order to influence the issues involved.* This language would seem to imply that a person can become a limited public figure only after a public controversy has arisen and at that point the person becomes involved in the controversy in an attempt to influence the resolution of the issues involved. In the present case, the majority have adopted the position that Kelly Sellars was not a public figure for a limited purpose because she did not "thrust herself voluntarily into the *vortex of a public controversy."* 9 Kan. App. 2d at 577.

In *Wolston v. Reader's Digest Assn., Inc.*, 443 U.S. 157, 167, 61 L.Ed. 2d 450, 99 S.Ct. 2701 (1979), Justice Rehnquist interpreted *Gertz* to require a court to focus on the "nature and extent of an individual's participation in the particular controversy giving rise to the defamation."

To illustrate the wide difference of judicial opinion as to whether a person is or is not a public figure, we note the annotation in 75 A.L.R. 3d 616 which discusses various cases around the country dealing with the issue. The annotation sets forth cases which hold that authors, schools and school person-

nel, members of the chiropractic profession, children of a married couple executed for treason, the president of a taxicab company, an accountant, and a public surveyor are public figures. On the other hand, the food service director of a public school system, a former vice president of employee relations of a private corporation, a salesman, an assembly line employee, and a socialite have been held not to be public figures.

I would interpret *Gertz* and the subsequent cases to mean that, if a private person voluntarily injects himself or herself into events which subsequently lead to a controversy about a subject of legitimate public interest, then that person should be deemed to be a public figure for a limited purpose relating to the particular controversy then before the court. It is the voluntary participation of the private citizen in the *events* which gave rise to the controversy, rather than that person's participation in the *controversy,* which should determine whether a person is a public figure for a limited purpose.

Judge Abbott, in his dissenting opinion in this case, sets forth in detail the undisputed factual circumstances. They are as follows: Kelly Heistand was an inmate of the Crawford County jail and under the control of Sheriff James P. Sellars. At that time, she was charged with attempted felony theft and was subsequently placed on two years' probation. She was released from the Crawford County jail on about September 16, 1979. Ten days later on September 26, 1979, Kelly Heistand was hired as a clerk-typist for the sheriff's department working under the supervision and control of Sheriff Sellars. Although she was paid with CETA funds, she was a county employee. CETA issued the checks in payment of her salary, but such payments were based on vouchers approved by the Crawford County Board of County Commissioners. Thereafter, during her employment, Kelly Heistand obtained a divorce and was restored to her former name of Bratton. The divorce became final in December 1979. Kelly last worked for the county on January 18, 1980, and proceeded to Springfield, Missouri, where she served fourteen days in jail from January 20, 1980, to February 3, 1980. After that time, she was granted probation. She married Sheriff Sellars in February 1980.

In 1980, Sheriff Sellars filed for reelection to that position. At that time, Kelly Heistand Sellars was his wife. A reporter for the

Pittsburg Morning Sun discovered the "county legals" for Crawford County payroll records for December 27, 1979, January 31 and February 20, 1980. The county fiscal records showed that Kelly Sellars's employment with Sheriff Sellars was not terminated until January 31, 1980. The reporter was aware of the fact that Kelly Sellars had been confined in a Missouri jail from January 20, 1980, to February 3, 1980. The reporter was concerned about a possible mispayment of public funds. The records also showed that on February 1, 1980, Kelly Sellars was paid a full month's wages in the amount of $597.76 for her employment in the Crawford County sheriff's office. On March 1, 1980, she was paid an additional one-half month's salary in the amount of $298.88. The reporter contacted the local CETA office in an effort to obtain payroll information, but was advised that the information was not available. The reporter then telephoned Milford Steele, an employee of the CETA office in Topeka. According to Steele, the two newspaper articles which appeared on October 25, 1980, and October 26, 1980, accurately reflected his conversation with the Morning Sun reporter. Thereafter, a check was made by CETA to determine whether there had been any misuse of CETA funds. The two articles were published in the Pittsburg newspaper about a week before the general election at a time when Kelly Sellars was the wife of a candidate for sheriff.

Judge Abbott considered all of these facts and concluded from the totality of the circumstances that Kelly Sellars was a limited public figure. Judge Abbott reasoned as follows:

"Kelly Sellars was a person convicted of a crime or crimes who at the time was a public employee hired and supervised by her fiancee and paid with special public funds. She was the wife of a public figure when the story was published. She and Sheriff Sellars had a unique love story insofar as how they first met and eventually married. He hired an ex-inmate of his own jail within days after her release from prison who was to be paid with public funds. She had committed a crime in Missouri either before that time or while working for the sheriff. She was married to him during the time he was Crawford County Sheriff running for reelection in a hotly contested campaign. The story was germane to Sheriff Sellars' fitness for the position. He had hired Kelly Sellars and was her supervisor. Obviously, if she was paid with his knowledge for the time she was incarcerated, it would reflect on his fitness for reelection. Kelly Sellars, of course, would have an interest in his reelection. Considering the totality of the circumstances, I conclude that by virtue of the facts of this case and her marriage to a public figure Kelly Sellars was a limited public figure, and to recover she must

prove actual malice. To me, the spouse of a public official must necessarily become a limited public figure to the extent the subject matters of the spouse's activities may be commented upon if those activities reflect on the fitness of a public official to perform the duties of the office held or sought." 9 Kan. App. 2d at 82.

In view of the undisputed factual circumstances in this case, I am convinced that Judge Abbott was correct in his conclusion that Kelly Sellars was a limited public figure. It cannot be denied that both of the published articles directly involved the qualifications of Sheriff Sellars in his quest for reelection. Kelly Heistand, a prisoner of the county in the custody of Sheriff Sellars, voluntarily went to work for the sheriff for a period of four months. Following her termination, she was paid one and one-half month's wages which apparently included a period of time in which she was incarcerated in a Missouri jail. The public had a right to be informed as to the financial operations of the sheriff's office and the expenditure of public monies. Such information was vital so that Crawford County citizens could vote in an informed manner in a free election.

Judge Irving R. Kaufman, Chief Judge of the United States Court of Appeals for the Second Circuit, observed in *Edwards v. National Audubon Society, Inc.*, 556 F.2d 113, 115 (2d Cir. 1977):

"In a society which takes seriously the principle that government rests upon the consent of the governed, freedom of the press must be the most cherished tenet. It is elementary that a democracy cannot long survive unless the people are provided the information needed to form judgments on issues that affect their ability to intelligently govern themselves."

Unfortunately, freedom of the press may be stifled by indirect as well as by direct restraints. In my judgment, the holding that Kelly Sellars is not a limited public figure under the factual circumstances in this case indirectly stifles the freedom of the press which is so vital to our free society.

MILLER and MCFARLAND, JJ., join the foregoing dissenting opinion.